IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Andre X. Tate
326 Bowen Falls                          No.:_____
Grovetown, GA 30813

*Plaintiff*


v.


Hon. Mark Averill
Acting Secretary of the Army
101 Army Pentagon
Washington, DC 20310-0101
*Defendant*

---

## Complaint for Declaratory and Other Relief

Andre X. Tate [hereinafter Plaintiff] submits this collateral action against

Defendant, in his official capacity, seeking declaratory and other relief from a

general court-martial conviction.  Officials subordinate to the Secretary of the

Army have purported to publish orders giving to Plaintiff's court-martial

conviction final effect. Article 76, Uniform Code of Military Justice (10 U.S.C. §

876)(20XX) [hereinafter UCMJ].[1]  Plaintiff seeks relief because the remaining

finding of the court-martial which tried him are void because it is supported by

---

[1] Mr. Tate cites to the version of the UCMJ in effect at the time of his court-martial and during post-trial review.

evidence admitted in violation of Plaintiff's constitutional right to confront witnesses. Further, Plaintiff seeks relief from the remaining finding and the sentence, as affirmed, because the appellate review afforded Plaintiff, as applied, violated his right to procedural due process.

### Jurisdiction

1. The Court has jurisdiction under 28 U.S.C. § 1331. The federal questions arise under the Uniform Code of Military Justice, 10 U.S.C. §§ 801-940, and the Manual for Courts-Martial, United States, an Executive Order with the force of law.

### Venue

2. Venue is proper in this district because the Defendant is present therein. 28 U.S.C. § 1391(e). A service secretary may be present within more than one federal district for the purposes of venue and is considered present within the federal district for the District of Columbia when he performs a significant amount of his duties there. *Smith v. Dalton*, 927 F. Supp. 1, 5-6 (D.D.C 2004).

### Parties

3. Plaintiff is a retired Chief Warrant Officer in the United States Army.[2]

4. Defendant is the acting Secretary of the Army. Defendant is named in his official capacity.

---

[2] The term "Warrant Officer" is a misnomer when used for grades W-2 to W-5, because personnel, like plaintiff, in these grades hold office by virtue of a commission, not a warrant.

## Facts relevant to the Complaint and Procedural History

Facts relevant to the petition.

5. Appellant was, at the time of his court-martial, separated from his wife, I.T. [hereinafter "Mrs. I.T."].  (Military Record at 233)[hereinafter MR]. Appellant and Mrs. I.T. separated on January 27, 2020 after Mrs. I.T. directed appellant to leave the marital home.  *Id*.  Appellant and Mrs. I.T. had married in 2016.  (MR at 236).  Their marriage was therefore approximately four years in duration.

6. Mrs. I.T. testified that she found appellant's Apple watch on January 25, 2020.  (MR at 266).  She accessed that watch, apparently unlawfully, and found messages which she claimed were of a sexual nature and inappropriate for a married man to possess.  (MR at 271).  She called her sister, Mrs. E.S., via FaceTime, to discuss the messages which she found on appellant's Apple watch. (MR at 270).  She then texted appellant and told him to return home immediately. *Id.*  When appellant arrived home, Mrs. I.T. met her husband in the bedroom of the marital residence.  (MR at 275).  She directed vulgarities at her husband, assumed a hostile posture and charged towards him.  (MR at 275-76, 507).  She claimed that appellant responded by punching her in the face.  *Id*.

7. Appellant testified in a manner mostly consistent with Mrs. I.T.'s version of events.  (MR 507-08).  He maintained, however, that Mrs. I.T. had punched first and that he, as a matter of instinct, punched back in self-defense.  (MR at 508).

8. Mrs. I.T. claimed that she lost consciousness.  When she awoke, Mrs. I.T. claimed that she went to a nearby Emergency Room to be treated for her previous unconsciousness.  (MR at 285-86).  She told medical treatment personnel that her face was red because she fell and hit her head on her sofa.  (MR at 287).

9.  Mr. M.P., an Army CID intelligence analyst, testified about appellant's membership in a motorcycle club, the Outcast Motorcycle Club.  He testified as an expert witness on the characteristics of gangs. (MR at 444, 450).  Mr. M.P. testified over defense objection for hearsay and confrontation.  (MR at 146-47).  He testified that the Outcast Motorcycle Club was "validated" as a criminal gang in databases maintained by the National Crime Information Center.  (MR at 456, 485).  He  testified specifically that the Outcast clubhouse in Fayetteville, North Carolia had been validated as gang in an NCIC database.  (MR at 475).  He further testified, based upon this validation, that the Fayetteville clubhouse has a reputation for violent acts.  *Id.*

10.  The NCIC criminal gang database is maintained for purposes of peace officer safety only, is based only upon a credible information standard of proof, relies in part on information which would, in any court, be inadmissible and is not the result of any process which provides the members of those groups so designated the ability to contest the listing.  (MR at 456, 466-67).  Mr. M.P. did not testify concerning the criminal conviction of any member of Outcast Motorcycle Club for any offense.  He testified that an organization does not meet the criminal

definition of a gang simply because the name of the organization contains the word "gang." (MR at 459). Mr. M.P. had no knowledge of the commission of any crime at the Fayetteville clubhouse of the Outcast Motorcycle Club. (MR at 485). Appellant was not a member of the Fayetteville clubhouse, in any event. (MR at 578). Mr. M.P. offered no expert opinion on whether Outcast was a gang or whether any of Outcast's by-laws, rituals or practices were in furtherance of any criminal activity.

11. Appellant testified that he did not commit any crime in order to join Outcast and that criminal activity was neither required nor desired in prospective members. (MR at 517). The by-laws of Outcast Motorcycle Club prohibit criminal activity and require the expulsion of any member who commits a criminal act. (MR at 523). No witness testified concerning any criminal act which any Outcast member ever committed.

<u>Procedural History</u>

12. On October 22, 2020, a military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of failure to obey a lawful order or regulation, domestic violence and conduct unbecoming an officer and a gentleman, in violation of Articles 92, 128b, and 133, UCMJ; 10 U.S.C. §§ 892, 928b and 933 (2018). The military judge sentenced Mr. Tate to be confined for six months and to be reprimanded. (MR at 726). The convening authority approved the sentence as adjudged. (MR at Action).

5

13.  Mr. Tate's sentence did not qualify for automatic review pursuant to Article 66, UCMJ.  On July 2, 2021, appellant timely filed application for relief from his general court-martial conviction with the Judge Advocate General of the Army [TJAG] pursuant to Article 69, UCMJ[3].  (Dep't of Army, Form 3499, Application for Relief from Court-Martial Findings and/or Sentence Under the Provisions of Title 10, United States Code, Section 869 (Jan. 2019) [DA Form 3499]).  On January 11, 2022, Mr. Tate submitted his first application to the Army Court of Criminal Appeals [ACCA], seeking further review pursuant to Rule for Courts-Martial [R.C.M.] 1201.

13. Litigation not relevant to this District Court proceeding followed. On December 21, 2022, appellant again filed a petition for review pursuant to R.C.M. 1201 before ACCA.  On January 19, 2023, Mr. Tate moved that the Judges of the ACCA recuse themselves because the judges  could not impartially sit in review of the action of their military superior, TJAG.  Mr. Tate further requested that the ACCA Chief Judge arrange for the detail of appellate judges of another military service.  ACCA denied Mr. Tate's motion.  On August 16, 2023, ACCA granted appellant's petition for review, but refused to consider all of the issues that Mr. Tate specified.  On March 8, 2024, ACCA set aside and dismissed Charges I and IV and set aside the reprimand.  *United States v. Tate,* 2024 CCA LEXIS 108 (A. Ct. Crim. App. Mar. 8, 2024)(mem. op. on further rev.).

---

[3] Congress subsequently extensively amended Articles 66 and 69, UCMJ.

14.  On March 11, 2024, appellant moved ACCA to reconsider and asked that court to also set aside Charge II because that Charge was supported by evidence admitted in violation of his confrontation clause rights.  On April 2, 2024, ACCA denied appellant's motion.

15.  On May 16, 2024, Mr. Tate petitioned the Court of Appeals of the Armed Forces [CAAF] for a grant of review.  *United States v. Tate*, 2024 CAAF LEXIS 270 (C.A.A.F. 2024).  On August 20, 2024, CAAF denied Mr. Tate's petition.  *United States v. Tate,* 2024 CAAF LEXIS 474 (C.A.A.F. 2024).

16.  At some point thereafter, a Convening Authority subordinate to defendant issued an order giving final effect to the remaining finding.  Article 76, UCMJ.

Facts relevant to Mr. Tate's procedural due process claim.

17.  TJAG is responsible for the selection and assignment of Judge Advocate officers to serve as military appellate judges on ACCA.

18.  At the time appellant's case was pending before ACCA, military appellate judges did not enjoy tenure and served at the pleasure of TJAG.

19.  TJAG is the only official with authority to remove an Army appellate judge. "Only TJAG can suspend (temporarily or indefinitely) a military judge or military appellate judge."  Army Regulation 27-10, *Military Justice* (20 NOV 20), para 15-11(b).

20.  TJAG holds the rank of Lieutenant General (O-9).  With the exception of the Chief Judge, who is a Brigadier General (O-7), the military appellate judges assigned to ACCA are field grade officers in the rank of Colonel or Lieutenant Colonel (O-6 or O-5).

### Causes of Action (collateral review of a court-martial conviction)

21.  **Count I – voidness of the findings to remaining Charge:** This court should collaterally review Mr. Tate's case and grant declaratory or such other relief to Mr. Tate because his conviction for the remaining charge is supported by constitutionally inform evidence admitted in violation of his confrontation clause right.  This error is not harmless beyond a reasonable doubt because of the relative weakness of the government's other evidence.  Mr. Tate incorporates by reference paragraphs 5-20 into this count.

26.  **Count II – voidness of the military appellate review process:** This court should collaterally review ACCA's action in affirming the remaining charge. The military appellate judges of ACCA could not impartially and independently review TJAG's action because he is their direct military superior who has authority to terminate their careers, control their assignments, and block their promotions.  . ACCA's affirmation of the remaining finding was therefore void.  Mr. Tate incorporates by reference paragraphs 5-20 into this count.

### Consideration of Plaintiff's claim

27. Plaintiff attaches the record of trial and relevant portions of the appellate record to this complaint and incorporates them by reference.

## Conclusion

Plaintiff prays that the Court enter judgment—

(a) declaring that the finding as to the remaining Charge is void because it is supported by constitutionally infirm evidence.

(b) declaring that ACCA's review and affirmance of the remaining Charge is void because its review was neither impartial nor independent.

(c) ordering that his conviction and sentence be expunged and that all rights, privileges, and property of which he has been deprived by reason of the sentence be restored; and

(d) granting such other and further relief as may in the circumstances be just and proper.

/s/
Robert Feldmeier
Attorney-at-law
THE LAW OFFICES OF ROBERT FELDMEIER
2920 Forestville Road, Suite 100-1076
Raleigh, North Carolina 27616
336-416-2479
robert.a.feldmeier@gmail.com